UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE MARIE GOODMAN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-01228 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born January 16, 1962, applied for disability benefits under Title II of the Social Security Act on September 4, 2013, alleging disability beginning July 12, 2009. Administrative

---

[1] While plaintiff's filings identify her as Janice Marie Goff, the court will continue to use the name listed on the docket to avoid confusion.

1

Transcript ("AT") 70, 253. Plaintiff alleged she was unable to work due to alcoholism, depression, anxiety, spinal injury, and back injury. AT 70. Based on her personal work history, her date last insured was December 31, 2014. AT 70. On December 2, 2013, she filed for Title II disabled widow's benefits, as her husband died on November 6, 2013.[2] AT 260. In a decision dated January 14, 2016, the ALJ determined that plaintiff was not disabled.[3] AT 14-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

////

---

[2] Disabled Widow benefits are a type of Title II benefit. 42 U.S.C.A. § 402(e). The same disability definition applies but the date last insured is determined by the deceased's work history. Id. at § 402(e)(1)(B).

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits.

3. The prescribed period ends on November 30, 2020.

4. The claimant has not engaged in substantial activity since July 12, 2009, the alleged onset date.

5. The claimant has the following severe impairments: degenerative disc disease; status post lumbar fracture; depression; and alcohol dependence.

6. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except she must never climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch and crawl; and is limited to simple, repetitive tasks with limited public contact.

8. The claimant is unable to perform any past relevant work.

9. The claimant was born on January 16, 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

10. The claimant has at least a high-school education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

13. The claimant has not been under a disability, as defined in the Social Security Act, from July 12, 2009, through the date of this decision.

AT 16-23.

////

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) post-hearing evidence submitted to the Appeals Council requires a remand; (2) the ALJ erred in weighing the medical evidence; (3) the ALJ failed to fully develop the record; (4) the ALJ improperly discredited plaintiff's testimony; (4) the ALJ erred at Step Five by applying the Grids at light work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

ANALYSIS

A. Medical Evidence

In reviewing the medical evidence as it relates to the issues plaintiff raises, the court includes post-decision evidence submitted to the Appeals Council, which determined that the new evidence did not relate to the period at issue nor affect the decision that plaintiff was not disabled. AT 2. As the Appeals Council declined review, the ALJ's decision is the Commissioner's final decision that is subject to judicial review. 42 U.S.C. § 405(g). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Astrue, 682 F.3d 1157, 1163 (9th Cir. 2012).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, the ALJ noted that plaintiff's medical records "document a history of intermittent treatment and short-term hospitalizations for a depressive disorder and alcohol dependence," including multiple Section 5150 psychiatric holds. AT 20. "In sum, the treatment records show that the claimant does have 'severe' alcohol dependence and depression. However, they do not support the claimant's allegations that they result in an inability to perform all work." AT 20.

"Similarly, the claimant's allegations of disabling neck and back pain are not supported by the record," the ALJ stated. AT 20. From 2002 to 2003, plaintiff was treated for a work injury, then "returned to her job afterwards with modified duty, and prior to the alleged onset date of July 12, 2009." AT 21. "She was found to be precluded from prolonged sitting, and was estimated to have lost approximately 75 percent of her pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling or other activities involving comparable physical effort by qualified medical examiner Frederick Kalmback, a chiropractor, in October 2003." AT 21; see AT 472.

The ALJ gave little weight to Dr. Kalmback's assessment "because he rendered his opinion in October 2003, about six years prior to the alleged onset date[;] his opinion is not supported by the objective findings and course of medical treatment during the relevant period of this decision[;] and because he is not an 'acceptable medical source.'" AT 21-22. Plaintiff argues that the ALJ's reasons for discounting Dr. Kalmback's opinion "do not accurately reflect the record." (ECF No. 17 at 27.) However, despite Dr. Kalmback's October 2003 opinion that plaintiff had "a disability precluding substantial work and prolonged sitting," AT 471, plaintiff returned to her clerical job in 2004 and worked at a substantial gainful level for several years. AT 267-269, 273-278, 281, 296. Plaintiff testified that she stopped working in 2009 for several reasons including back pain, a poor work atmosphere, a spouse who brought in an income, and wanting to spend more time with her daughter, who had Down's Syndrome. AT 56. See Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (affirming ALJ's finding of nondisability where

"substantial evidence indicated that the condition of [plaintiff's] back had remained constant for a number of years and that her back problems had not prevented her from working over that time.").

The ALJ also found that Dr. Kalmback's opinion was not supported by the medical record during plaintiff's alleged period of disability, July 2009 through January 2016. The ALJ gave great weight to the opinions of State agency medical consultants Dr. M. Acinas and Dr. H. Crowhurst, both of whom opined that plaintiff could perform light work with postural limitations as reflected in the physical RFC. AT 21, 81-82, 100-102. The ALJ found these physicians' opinions "well supported by the record as a whole," including "no evidence of treatment [for back or wrist issues] prior to April 2010 or after May 2013 during the relevant period of this decision." AT 21. The ALJ also noted a lack of imaging studies made after plaintiff sustained a fall in November 2014, and "very limited evidence of follow up treatment in the record."[4] AT 21-22. "Moreover, in May 2015, the claimant underwent a follow up examination for her fracture, and the lumbar vertebra fracture was assessed to be closed without spinal cord injury. She was noted to be awaiting a referral to UCSF for surgery." AT 21; see 1272-1273.

Plaintiff points out that the State agency consultants, Dr. Acinas and Dr. Crowhurst, rendered their opinions in November 2013 and did not review any later medical records. (ECF No. 17 at 9-10.) In May 2014, plaintiff hired a representative to assist with her claim, and in June 2015 began submitting additional medical records, including treatment and emergency room records from late 2014 through 2015, comprising Exhibits 20F through 25F of the administrative record. (ECF No. 17 at 10-11; see AT 1078-1242.)

In November 2014, after the spinal fracture noted above, plaintiff was admitted to the hospital for a broken ankle sustained in another fall. AT 1112. Her ankle fracture was surgically repaired, and she was discharged with a splint and instructions that the ankle would not bear weight for six weeks. AT 1091. In late December 2014, she presented at the hospital with ankle pain and increased back pain due to the cast on her left leg. AT 1082. Treatment notes indicated

---

[4] See AT 1080 (April 2015 note by treating neurosurgeon Dr. Joel Ulloth that plaintiff suffered a compression fracture in a November 2014 fall, resulting in increased back pain).

that she "had a compression fracture of her back just previous to this ankle fracture." AT 1082. A December 29, 2014 x-ray showed stable hardware and the fracture healing. AT 1083.

In January 2015, plaintiff sustained another fall and was hospitalized for a fractured rib on her left side, among other issues. AT 1149-1150, 1159. Reviewing a January 7, 2015 CT scan, Dr. Irwin Maier, a radiologist, stated:

> There appears to be mild worsening of the subacute to chronic severe L1 compression fracture with mild worsening of the retropulsion into the spinal canal. This is causing moderate spinal canal stenosis. Mild multilevel degenerative disc disease with disc bulge causing mild spinal canal narrowing that is most significant at the L3-4 level.

AT 1175.

Plaintiff was hospitalized again in January 2015 for an ankle sprain after she rolled her ankle, AT 1135-1136, and again in April 2015 for weakness and trouble ambulating. AT 1198. In his April 28, 2015 discharge diagnosis, Dr. Michael Neal listed multiple issues including severe protein-calorie malnutrition, alcohol abuse with continuing alcohol dependence, depression with anxiety, hypothyroidism, anemia, history of noncompliance, and "chronic L1 compression fracture with worsening listhesis [vertebra displacement] and kyphosis [rounded or hunched back] with acute pain on top of chronic pain syndrome with surgical evaluation by Dr. Ulloth indicating need for high level of care therapy and intervention for which she will be referred in the outpatient setting." AT 1187-1188.

Neurosurgeon Dr. Joel Ulloth examined plaintiff in April 2015, noting her low back pain and L1 compression fracture. AT 1080. He noted that an April 2015 MRI[5] of the lumbar spine showed "L1 compression deformity with worsened kyphosis and mild to moderate central stenosis at T12/L1," and assessed her with an "L1 compression fracture with worsened kyphosis and worsening pain." AT 1080. Dr. Ulloth referred plaintiff to the Spine Center at the University of California, San Francisco (UCSF) for surgery, noting that he would provide post-operative care. AT 1080. In a June 11, 2015 disability certificate, Dr. Ulloth recounted these findings and stated that plaintiff was "disabled until released, at this point we are unsure if that is possible."

---

[5] This MRI is not included in the record, though Dr. Neal also cites it in his April 28, 2015 discharge report. AT 1195.

8

AT 1079.

The ALJ discounted Dr. Ulloth's findings, writing:

> The record does not contain any imaging studies to support Dr. Ulloth's statement, and there is very limited evidence of follow up treatment in the record. Moreover, in May 2015, the claimant underwent a follow up examination for her fracture, and the lumbar vertebra fracture was assessed to be closed without spinal cord injury. She was noted to be awaiting a referral to UCSF for surgery.

AT 21, citing AT 1272-1273. As to Dr. Ulloth's June 2015 disability certificate, the ALJ stated that disability was a legal determination reserved to the Commissioner. AT 22. See C.F.R. § 404.1527(d)(1).

The ALJ correctly discounted Dr. Ulloth's finding on the ultimate issue of disability. More problematically, however, the ALJ assigned "great weight" to State agency medical consultants who did not review plaintiff's records past November 2013, but gave little weight to her treating specialist who assessed plaintiff with an "L1 compression fracture with worsened kyphosis and worsening pain" after a November 2014 fall. The agency doctors' assessments did not account for plaintiff's lumbar vertebra fracture, ankle fracture, ankle surgery, and broken rib sustained after their review. Defendant points out that plaintiff's medical treatment during this period largely related to her ongoing alcohol abuse and injuries sustained while intoxicated. See 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.") Nonetheless, these were significant medical events relevant to plaintiff's physical condition during the alleged period of disability.

As to plaintiff's back and spine issues, the opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. The ALJ did not supply such reasons for discounting Dr. Ulloth's findings as to plaintiff's worsening pain and spinal deformity, possibly warranting surgery. Though the ALJ cited "limited evidence of follow-up treatment," he did not address later relevant records, including

1  June 2015 examination notes by neurologist Dr. Harvinder Birk noting that plaintiff's gait was
2  "abnormal" and she was "using crutches due to L1 fracture."  AT 1120.
3       Plaintiff testified at the September 2015 hearing that Dr. Ulloth had since diagnosed her
4  with scoliosis and recommended "a much more significant surgery" than originally discussed,
5  including the placement of steel rods in her spine.  AT 66-67.  Plaintiff's appointment for a
6  consultation at UCSF was set for two weeks after the September 2015 hearing.  AT 53.  Because
7  it was unclear what the USCF specialist would recommend, plus other outstanding issues, the
8  ALJ kept the record open for thirty days after the hearing to collect additional medical records.
9  AT 64.  However, plaintiff's USCF appointment was rescheduled beyond the thirty-day limit and
10 there was no timely recommendation about surgery.  AT 374.  Plaintiff's representative supplied
11 other recent records, including a September 22, 2015 form in which Dr. Ulloth authorized in-
12 home support services based on "L1 compression deformity with worsened kyphosis and mild to
13 moderate central stenosis T12/L1."  AT 1249.  Dr. Ulloth noted that "patient is pending surgery
14 date at UCSF" and indicated that she was "unable to independently perform one or more activities
15 of daily living."  AT 1249.  The ALJ did not address this record, but concluded that as of
16 December 2013 (prior to her spinal fracture) plaintiff "needed no help doing her activities of daily
17 living."  AT 18.
18      Following the ALJ's adverse decision, plaintiff submitted additional records to the
19 Appeals Council, including a February 3, 2016 MRI scan of the lumbar spine indicating
20 compression fracture of the L1 vertebra, lumbar scoliosis concave to the left apex at L2-L3,
21 degenerative discs from T12-L1 through L4-L5, neuroforaminal stenosis most severe at L4-L5,
22 and joint arthropathy most severe on the left L2-L3.  (ECF No. 18-1 at 3; see AT 375.)  The
23 Appeals Council found that the MRI (and other later records, including those relating to
24 plaintiff's eventual back surgery) did not concern the period at issue.  AT 2.  However, the
25 February 2016 MRI was taken one month after the disability period ended and related to
26 conditions identified during the disability period by Dr. Ulloth.  It bore directly on the ALJ's
27 conclusion that no imaging studies supported Dr. Ulloth's findings and was probative of the
28 severity of plaintiff's spinal deformity after her spinal fracture.  See Samspson v. Chater, 103

F.3d 918, 922 (9th Cir. 1996) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.").

Based on the foregoing, the ALJ committed prejudicial error in discounting the treating physician's findings without specific and legitimate reasons supported by substantial evidence.

### B. Duty to Develop

As suggested above, the development of the record was also flawed.

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

While the ALJ discussed the medical evidence subsequent to plaintiff's November 2014 spinal fracture, he made an independent evaluation of the diagnosed impairments on plaintiff's ability to work on a function-by-function basis. See Stevenson v. Colvin, 2:15-cv-0463 CKD (E.D. Cal. Oct. 27, 2015), at 6-7. The ALJ found the effects of any such impairments negligible, such that they did not alter the functional assessments of the agency physicians in November 2013. Under the circumstances, however, the ALJ's duty to further develop the record was triggered, warranting a consultative examination by a physician who had access to plaintiff's medical records through the November 2014 spinal fracture and its aftermath. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . and must not succumb to the temptation to play doctor and make . . . independent medical findings."). In Stevenson, supra, the undersigned concluded that "the ALJ improperly interpreted the treating records that were available and made an RFC determination based on that raw medical data. Accordingly, the ALJ committed prejudicial error that invalidated his physical RFC findings." Id. at 8 (collecting cases).

As plaintiff is entitled to summary judgment based on the foregoing, the court does not reach the remaining issues.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was disabled during the relevant period. As discussed above, the record has not been fully developed such that the ALJ could make a proper RFC determination regarding the functional impact of plaintiff's physical impairments throughout the relevant time period. Thus, additional development of the record is warranted.

On remand, the ALJ shall obtain a consultative physical examination by a physician who has full access to plaintiff's past medical records, including the February 2016 spinal MRI. The consultative examination shall focus on the functional limitations caused by plaintiff's physical impairments during the relevant time period.[6] The ALJ is also free to develop the record in other

---

[6] Although the consultative examination will take place in the present, the consultative examiner shall use best efforts, utilizing the findings of present physical examination, plaintiff's past

ways, as needed.

The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period – provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is denied; and
3. This matter is remanded for further proceedings consistent with this order.

Dated: January 2, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/goodman1228.ssi.ckd

---

medical records, and the examiner's clinical expertise and judgment, to render an opinion regarding plaintiff's functional capacity during the relevant period.

13